# EXHIBIT A

## **CONFIDENTIAL SETTLEMENT AGREEMENT
AND GENERAL RELEASE OF ALL CLAIMS**

Black Diamond Plumbing and Mechanical Inc. (hereinafter "Black Diamond") and Jason Innis, and his heirs, executors, administrators, successors, and assigns (collectively "Innis") (together with Black Diamond, the "Parties"), enter into the following Confidential Settlement Agreement and General Release ("Agreement"):

WHEREAS, on or about February 19, 2016, Innis filed a Complaint against Black Diamond in the United States District Court for the Northern District of Illinois, Case No. 16-CV-2436;

WHEREAS, on or about May 26, 2016 Innis filed a First Amended Complaint against Black Diamond alleging violations of the Fair Labor Standards Act (hereinafter "FLSA") and Illinois Minimum Wage Law (hereinafter "IMWL") allegedly arising out of Innis's former employment with Black Diamond and through which Innis sought to recover damages (the "Lawsuit");

WHEREAS, Innis subsequently indicated his intention to file a Second Amended Complaint against Black Diamond alleging violations of the Illinois Wage Payment and Collection Act (hereinafter "IWPCA") allegedly arising out of Innis's former employment with Black Diamond and through which Innis indicated his intention to seek to recover additional damages;

WHEREAS, Black Diamond denies that Innis is owed any amounts under the FLSA, IMWL or IWPCA and denies that it has any liability to Innis;

WHEREAS, the Parties to this Agreement desire to fully and finally resolve all claims that Innis has or may have against Black Diamond;

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Consideration.** In consideration for Innis's promises under this Agreement, and complying with its terms, Black Diamond agrees to pay Innis and his attorneys the total gross amount of Seventeen Thousand Five Hundred Dollars and 00/100 Cents ($17,500.00) to be paid as follows:

    (a) a check made payable to Innis in the gross amount of Twelve Thousand Five Hundred Dollars and 00/100 Cents ($12,500.00), less normal and ordinary payroll deductions required by law, to be reported on an IRS Form W-2 to Innis; and

  (b) a check made payable to Workers' Law Office P.C. in the amount of Five Thousand Dollars and 00/100 Cents ($5,000.00), for Innis's attorneys' fees, costs and expenses, to be reported on IRS Form 1099s issued to Innis and his attorney in accordance with IRS regulations.

  The consideration set forth above shall be provided to Workers' Law Office P.C. within fourteen (14) calendar days after Innis delivers all of the following documents to counsel for Black Diamond:

  (1) a copy of this Agreement executed by Innis and not revoked by Innis;

  (2) a completed W-9 Form for Innis's attorneys; and

  (3) an order entered by the Court approving this Agreement in accordance with Paragraph "6" below.

  Notwithstanding the above, no payment shall be made before Innis's seven-day revocation period passes.

  Black Diamond makes no representations concerning the taxability of the consideration set forth above, and Innis agrees that he has not relied on such representations. Black Diamond makes no representations or warranties with respect to the tax consequences of the payment of any sums to Innis under the terms of this Agreement. Innis agrees and understands that he is responsible for payment of local, state and/or federal taxes on the sums paid hereunder by Black Diamond and any penalties or assessments thereon. In the event of any assessment by any taxing authority in connection with this payment, Innis shall fully indemnify Black Diamond for any costs, fees, taxes, penalties or interest assessed together with any costs or attorneys' fees incurred by Black Diamond for any tax obligations owed by Innis related to this payment and for any costs or attorneys' fees incurred by Black Diamond to enforce this indemnification agreement with Innis.

**2. No Consideration Absent Execution of this Agreement.** Innis understands and agrees that he and his attorneys would not receive the monies and/or benefits specified in Paragraph "1" above, except for his execution of this Agreement and the fulfillment of the promises contained herein.

**3. General Release, Claims Not Released and Related Provisions.**

  **a. General Release of All Claims**. Innis knowingly and voluntarily releases and forever discharges Black Diamond, Axberg Heating Company, Inc., their parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, successors and assigns, and their current and former owners, shareholders, employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Innis has or may have against the Releasees as of the date of execution of this Agreement, including, but not limited to any claims related to Innis's employment or separation of employment from Black Diamond and any claims based on the following:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Older Workers Benefit Protection Act ("OWBPA");
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Fair Labor Standards Act ("FLSA");
- The False Claims Act, (including the qui tam provisions thereof);
- The Equal Pay Act;
- The Uniformed Services Employment and Reemployment Rights Act;
- The Illinois Human Rights Act;
- Any Illinois statutory law regarding retaliation/discrimination for filing a workers' compensation claim;
- The Illinois common law claim for retaliation for filing a workers' compensation claim;
- The Illinois Equal Pay Act;
- The Illinois Equal Wage Act;
- The Illinois Wage Payment and Collection Act;
- The Illinois Minimum Wage Law;
- The Illinois One Day Rest in Seven Act;
- The Illinois Eight Hour Day Act;
- The Illinois Family Military Leave Act;
- The Illinois Worker Adjustment and Retraining Notification Act;
- The Illinois Health and Safety Act;
- The Illinois Whistleblower Act Reward and Protection Act;
- The Illinois School Visitation Rights Act;
- The Illinois AIDS Confidentiality Act;
- Illinois Right to Privacy in the Workplace Act;
- The Illinois Genetic Information Privacy Act;
- The Illinois Personnel Record Review Act;
- The Illinois Victims' Economic Safety and Security Act;
- Illinois Criminal Identification Act
- Smoke Free Illinois Act;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

   **b.**  **Claims Not Released.** Innis is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Black Diamond's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation

and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) enforce this Agreement.

    **c.**   **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Innis from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC, etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Innis's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by such agencies. However, to the maximum extent permitted by law, Innis agrees that if such an administrative claim is made, Innis shall not be entitled to recover any individual monetary relief or other individual remedies.

**4.**   **Acknowledgments and Affirmations**. Innis affirms that Innis has not filed, caused to be filed, or presently is a party to any claim, complaint, or action against Black Diamond in any forum or form other than the Lawsuit.

    Innis also affirms that Innis has reported all of his hours worked and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Innis signs this Agreement. Innis also affirms that Innis has been granted any leave to which Innis was entitled under the Family and Medical Leave Act or state or local leave or disability accommodation laws.

    Innis further affirms that Innis has no known workplace injuries or occupational diseases.

    Innis also affirms that Innis has not divulged any proprietary or confidential information of Black Diamond and will continue to maintain the confidentiality of such information consistent with Black Diamond's policies and Innis's agreement(s) with Black Diamond and/or common law. Under the federal Defend Trade Secrets Act of 2016, Innis shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Innis's attorney in relation to a lawsuit for retaliation against Innis for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

    Innis further affirms that Innis has not been retaliated against for reporting any allegations of wrongdoing by Black Diamond or its officers, including any allegations of corporate fraud.

    Innis shall not apply in the future for employment with Black Diamond because of, among other things, irreconcilable differences with Black Diamond. Innis acknowledges and agrees that this agreement not to seek future employment with Black Diamond is purely contractual and is in no way involuntary, discriminatory, or retaliatory.

Innis affirms that all of Black Diamond's decisions regarding Innis's pay and benefits through Innis's separation of employment were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

Innis acknowledges that he is solely responsible for any liens made in connection with this matter on his behalf by any attorney or law firm.

Innis further acknowledges and agrees that he will indemnify the Releasees for any and all costs any of them incur as a result of any claims made by any attorneys or law firms, related to this matter, to recover monies from the amount payable to Innis under this Agreement.

Innis affirms that as of the date he signs this Agreement, he is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Innis under this Agreement, Innis agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Innis, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Innis is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

**5.** **Limited Disclosure and Return of Property.** Innis agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, except to Innis's spouse, tax advisor, an attorney with whom Innis chooses to consult regarding Innis's consideration of this Agreement and/or to any federal, state, or local government agency. Innis agrees that in the event terms of this Agreement are disclosed to a spouse, tax advisor, and/or an attorney with whom Innis chooses to consult regarding his consideration of this Agreement, Innis will instruct them not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement or any part thereof or any matters, factual or legal, contained in the Agreement (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, television station, Internet website, or to any future, current or former employee, representative, agent, customer, creditor, or competitor of Black Diamond without the express written consent of Black Diamond. Innis agrees that, in the event his spouse, tax advisor and/or attorney breaches any provision of this Agreement, it shall be as if Innis himself breached the Agreement, and he will be personally liable for all ensuing damages. Notwithstanding the foregoing, the Agreement may be introduced as evidence in any proceeding only for the purpose of enforcing its terms.

Innis affirms that Innis has returned all of Black Diamond's property, documents, and/or any confidential information in Innis's possession or control. Innis also affirms that Innis is in possession of all of Innis's property that Innis had at Black Diamond's premises and that Black Diamond is not in possession of any of Innis's property.

**6.      Submission to Court for Purposes of Approval of Settlement**.  The Parties intend for Innis to waive any and all claims Innis may have against the Releasees from the beginning of time up to and including the date on which Innis signs this Agreement, including claims under the FLSA, IMWL and IWPCA and therefore desire that this Agreement be approved by the Court. Accordingly, the Parties agree to the following:

(a) Following execution of this Agreement, Innis will cause his attorneys to file a Joint Motion for Approval of the Settlement and for Dismissal of Plaintiff's First Amended Complaint ("Joint Motion");

(b) Drafts of the Joint Motion and a proposed order are attached to this Agreement as Attachments A and B and incorporated herein;

(c) In the event the Agreement is not approved by the Court, this Agreement shall be null and void and no payments shall be made pursuant to the Agreement.

**7.      Non-Disparagement.**  Innis agrees to refrain from making maliciously disparaging statements, oral or written, about Black Diamond or its officers, directors, managers or employees, including but not limited to communications on social media websites such as Facebook, Twitter or LinkedIn, on blogs, by text or email or other electronic means, except for truthful statements required by legal process issued by a court or tribunal of competent jurisdiction.

**8.      Governing Law and Interpretation.**  This Agreement shall be governed in accordance with the laws of the State of Illinois without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

**9.      Nonadmission of Wrongdoing.**  The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**10.     Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

**11.     Costs and Attorney's Fees**.  Except to the extent stated in Paragraph "1" of the Agreement, each Party to the Agreement shall bear their own costs and attorneys' fees associated with this dispute, as well as the negotiation and preparation of the Agreement.

**12.     Fair Meaning**.  The language of all parts of this Agreement shall in all cases be construed as a whole according to fair meaning, and not strictly for or against any of the Parties, regardless of who drafted it.

**13. Entire Agreement.** This Agreement sets forth the entire agreement between the Parties, and fully supersedes any prior agreements, understandings or obligations between the Parties pertaining to the subjects addressed herein. Innis acknowledges that he has not relied on any representations, promises, or agreements of any kind in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

**14. Assignment of Claims**. Innis hereby represents and warrants that he has not assigned or transferred or purported to assign or transfer to anyone any claim, action or cause of action based upon, arising out of, or connected in any way with any of the matters released herein.

**15. Signatures.** This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

**INNIS IS ADVISED THAT INNIS HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. INNIS IS ALSO ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO THE SIGNING OF THIS AGREEMENT.**

**INNIS MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY INNIS SIGNS THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO DAVID GROWNEY, EXECUTIVE DIRECTOR, BLACK DIAMOND PLUMBING AND MECHANICAL INC., 1400 MILLER PARKWAY, MCHENRY, IL 60050 AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT." THE REVOCATION MUST BE PERSONALLY DELIVERED TO DAVID GROWNEY, OR MAILED TO DAVID GROWNEY AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER INNIS SIGNS THIS AGREEMENT.**

**INNIS AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RE-START OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**INNIS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS INNIS HAS OR MIGHT HAVE AGAINST RELEASEES.**

[Remainder of page intentionally left blank]

The parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

| **JASON INNIS** | **Black Diamond Plumbing and Mechanical Inc.** |
|---|---|
| By:_____ <br>     Jason Innis <br><br> Date:_____ | By:_____ <br><br> Name:_____ <br><br> Title:_____ <br><br> Date:_____ |